The DOMED STADIUM HOTEL, INC.
doing business as Holiday
Inn-Superdome

v.

HOLIDAY INNS, INC.

Civ. A. No. 78–4115.

United States District Court,
E. D. Louisiana.

Oct. 29, 1979.

James B. Henry, Kaye, Scholer, Fierman, Hays & Handler, New York City, Ford J. Dieth, Leach, Paysse & Baldwin, New Orleans, La., for plaintiff.

Peter A. Feringa, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant.

HEEBE, Chief Judge:

This suit is before the Court on the motion of defendant Holiday Inns, Inc., to have the New York law firm of Kaye, Scholer, Fierman, Hays and Handler disqualified from representing plaintiff. The firm has been brought in by local counsel to act as "of counsel" to their firm. The complaint filed on behalf of plaintiff alleges that defendant has violated its license agreement with the plaintiff, which operates a Holiday Inn in downtown New Orleans, by acquiring a New Orleans hotel itself and incorporating it into the Holiday Inns system. Plaintiff relies on violation of various implied duties and convenants running from Holiday Inns, Inc., as the franchisor to it as the franchisee, as well as violations of the antitrust laws, both under the Sherman and Clayton Acts. The basis for the disqualification motion is that the Kaye, Scholer firm represented defendant Holiday Inns on an appeal in a previous suit brought against it. A three-day evidentiary hearing was held before this Court so that we would be in a position to make specific factual findings with respect to the issue of disqualification, as required under the law in this Circuit. *Wilson P. Abraham Const. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir. 1977). Being mindful of the extensive evidence presented, both by way of testimony and exhibits, which has been subsequently highlighted by findings of fact and conclusions of law submitted by the parties, this Court is of the opinion that the motion to disqualify the Kaye, Scholer firm should be denied.

Holiday Inns both owns and licenses hotels and motels, owning and operating approximately 250 and licensing approximately 1450, on a worldwide basis. Pursuant to Holiday Inns' license agreement between it and the various licensees of Holiday Inn hotels and motels, the International Association of Holiday Inns (IAHI) was created. Its membership before and after its incorporation has always been made up of the holders of license agreements with Holiday Inns (which are referred to by plaintiff and will be by the Court as "franchisees") and company-owned inns. Holiday Inns would try to convince the Court that it is the largest member of IAHI, presumably on the theory that it owns and operates 266 hotels or motels while each franchisee only owns or operates one. It asserts that its membership is equal to 20 per cent of the IAHI because of the number of Holiday Inn hotels or motels it owns or operates which are members of the IAHI. By this same reasoning, the other 1452 hotels or motels can be grouped under the classification of franchisee members which would than make up 80 per cent of the IAHI membership. Plaintiff is a member of this franchisee group, which we consider a distinct one and, therefore, the larger of the two member groups.

Most of the dispute as to the Kaye, Scholer firm's involvement with Holiday Inns relates to its work in a suit brought by American Motor Inns, Inc. against Holiday Inns in the United States District Court for the District of New Jersey. This suit is referred to as the AMI litigation. The plaintiff, AMI, alleged, among other things, that Holiday Inns conspired with one or more licensees in the Newark Airport area to keep it out of this area by refusing it a franchise. Moreover, under its license agreement, AMI as well as all other Holiday Inns licensees were not permitted to own or operate a lodging facility other than a Holiday Inn and AMI also attacked this so-called non-Holiday Inns clause. In February of 1973 certain franchisees representing IAHI retained the Kaye, Scholer firm and its senior partner Milton Handler to represent it in connection with this AMI litigation. The attack on the legality of the non-Holiday Inn clause was its primary concern since IAHI was of the collective opinion that that clause was beneficial to them on the reasoning that if Holiday Inns franchisees did not own any other lodging facility, it would assure the practice of reservation referrals among members of the Holiday Inns system. In addition, IAHI was concerned with AMI's allegation that Holiday Inns and its franchisees were involved in a national conspiracy to allocate Holiday Inns locations.

Milton Handler was successful in having the second issue dismissed plus having the IAHI's position changed from that of intervenor to that of *amicus curiae* at the conclusion of AMI's case. Although they were working toward the same end, the Kaye, Scholer firm did not handle any matters for Holiday Inns or interfere with their counsels' handling of the suit for it. As a matter of fact, it seems clear to this Court that the evidence adduced at the hearing was to the effect that Holiday Inns was careful not to disclose anything of a confidential nature to IAHI's counsel. Any information that was communicated was quite general and subsequently brought out at trial. It was quite clear to the Court that Kaye, Scholer represented only IAHI at the trial of the AMI case. When the decision was rendered on the case, the Court held the non-Holiday Inn clause to be an impermissible restraint of trade, pointing out that less restrictive means were available. It also dealt with two other Holiday Inns practices. One was a "radius letter" policy of the company which permitted its existing franchisees to object to prospective franchises in their areas. The other was a "parent-company town" policy by which Holiday Inns protected its company-owned inns by not granting franchises in cities where they had one. Both of these were found to be anti-trust violations. At the outset, Milton Handler took the position that the IAHI should not appeal on the non-Holiday Inn clause issue. Along this line, he was invited to attend a meeting in Memphis, which he did as counsel for IAHI, to state his views to execu-

tives of Holiday Inns. Holiday Inns' own counsel was present. Any information communicated at that time came from Mr. Handler to Holiday Inns at the meeting and not the other way. Subsequent action by the court in the AMI case changed Mr. Handler's opinion and he decided that the decision should be appealed. A written opinion to that effect was sent to the Executive Committee of Holiday Inns at the IAHI's request. Aside from this, it is quite clear to the Court that Holiday Inns was represented only by their own retained counsel, the Cadwalader firm, during the trial of the AMI case.

Subsequently, Mr. Handler and another Kaye, Scholer partner, Elizabeth Head, met with the senior vice president of Holiday Inns who asked them to handle the briefing and argument of the AMI appeal. This retention of the Kaye, Scholer firm on July 11, 1974 was for the sole purpose of handling the appeal and it was not agreed to until Kaye, Scholer received approval of this retainer from the IAHI. At all times, Mr. Handler made it clear that the IAHI was his client. In addition, the Kaye, Scholer firm and Mr. Handler learned nothing more about Holiday Inns on the appeal than he had from his own client, IAHI, at the trial level. The AMI litigation was ended in July of 1975 by settlement.

Defendant relies heavily on the testimony of two of its officials to support its position that there was sufficient connection between Holiday Inns and the Kaye, Scholer firm to support disqualification—Michael Rose, senior vice president of Holiday Inns; Charles M. Collins, general counsel of Holiday Inns. They testified to the effect that during the appeal period, Kaye, Scholer's personnel were consulted by Holiday Inns on a broad basis concerning its future policy with respect to such things as franchise applications, mandatory leasing of signs and equipment, pending litigation, pending federal and state legislation, proposed FTC regulations and reservation systems. On August 1, 1978, Mr. Rose telephoned Ms. Head and invited her to come to Memphis to discuss procedures for handling franchise applications. He testified to a discussion of a broad study of the procedure. However, for this Court, it is a matter of credibility and we find the testimony of Mr. Handler and Ms. Head unimpeachable. According to Ms. Head, the Memphis meeting encompassed nothing more than a discussion of how to handle Holiday Inn matters while the appeal was pending. Both attorneys testified adamantly that they never discussed nor were given information relative to any of the items listed above. As matters resulted, the Kaye, Scholer firm not only did not make a study of Holiday Inns' licensing procedures, but another firm was subsequently retained to do so. Defendant finds it very significant that after Ms. Head spoke to Mr. Rose on August 1, 1974, she opened a "consultation" account, for the firms internal time recording procedures, for Holiday Inns which was in addition to the "appeal" account for it. However, Ms. Head's time for the Memphis meeting was charged to the "appeal" account. And as matters evolved, since as previously mentioned no work ever resulted between the Kaye, Scholer firm and Holiday Inns other than the AMI appeal, the consultation account was subsequently merged with the appeal account for the purposes of final billing by the Kaye, Scholer firm to Holiday Inns. We think that it is clear from the evidence that the Kaye, Scholer firm did no more work for Holiday Inns after the AMI case was settled. We are also convinced that both Mr. Handler and Ms. Head had made it clear to Holiday Inns' representatives that Kaye, Scholer was in the process of reviewing the relationship of the IAHI to Holiday Inns and that Mr. Handler held the position that the IAHI membership should not include Holiday Inns. Holiday Inns was, therefore, aware that the Kaye, Scholer firm could potentially be representing the IAHI against them.

The generally accepted approach to a motion to disqualify counsel of an opposing party is set forth by the court in *Wilson P. Abraham Const. v. Armco Steel Corp.*, supra at 252:

The law in this Circuit is fairly straightforward. This Court has recently reaffirmed with regards to attorney dis-

qualification that a former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir. 1976); *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953). This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The Court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of his former client. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2nd Cir. 1973). The inquiry is limited solely to whether the matters of the present suit are substantially related to matters of the prior representation, and this is because this Court recognizes that in order to aid the frank exchange between attorney and client, it is necessary to preclude even a possibility that information given in confidence by a former client will ever be used without that client's consent. The law in this Circuit is, of course, little more than a reinforcement of the Code of Professional Responsibility, Ethical Considerations, and Disciplinary Rules, promulgated by the American Bar Association and adopted by the Supreme Court of Louisiana effective July 1, 1970.

There is a real question in this Court's mind whether Holiday Inns, Inc., was a "former client" of the Kaye, Scholer firm in the sense presumed above. As set forth, it was retained by Holiday Inns solely for the purpose of the AMI appeal, which appeal would have been undertaken by the firm for IAHI had it seemed desirable. And, this Court finds that in the process of prosecuting the appeal, to the extent it went, absolutely no confidential information was received by any attorney associated with the Kaye, Scholer firm from Holiday Inns. We realize that under the above language, and the

cases which it cites, this is not something that we may inquire into. However, as pointed out in *George v. LeBlanc*, 78 F.R.D. 281, 287–88 (N.D.Tex.1977), aff'd, 565 F.2d 1218 (5th Cir. 1977), this rule was formulated to handle situations where an attorney switches to a new client who is on the opposite side from a former client on a common issue, which is not the case here. That court further notes that there has to be a limit to the class of attorneys to whom an exchange of confidential information is imputed. We, also, do not think that we are dealing with the typical case of deciding whether to disqualify an attorney who "switches sides." Nor are we sure that there existed the typical attorney-client relationship between the Kaye, Scholer firm since the firm ". . . never attempted to 'prosecute litigation' in any role. . . [and] disqualification would be a severe setback to plaintiffs' suit, and would deprive them of their chosen counsel." *George*, supra at 289. It may be too literal to distinguish prosecuting litigation from prosecuting an appeal, however, it seems to this Court that the nature of the relationship between attorney and client in each is entirely different, with much less client contact at the appeal level.

There is an additional reason why we do not think that we should have to reach the question of whether or not there is a substantial relationship between the subject matter of the "representation" of Holiday Inns in the AMI case and the representation of plaintiff in the instant case. The reason for this is expressed in *Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977). In the *Allegaert* case, the attorneys who were sought to be disqualified had represented connected parties in a somewhat similar situation to the one before us. There it was counsel for corporate parties involved in bankruptcy proceedings who had formerly represented a connected corporation which was the subject of the bankruptcy. The court in *Allegaert*, supra, at 248 stated that ". . . neither the party now seeking disqualification, . . . nor anyone connected with it 'had any expectation' that the information acquired would be kept secret from the attorneys' prior, contemporaneous and cur-

rent clients (primary clients), . . . [and the party claiming disqualification] is not now entitled to claim it, and that accordingly the attorneys' primary clients may enjoy the continued services of the lawyers upon whose advice they have been relying for many years." The Court went on to say, supra at 250, that: ". . . before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." The Court then reasoned that the party seeking disqualification had to have known that their representation was with the knowledge and approval of the primary clients and also that any information given by them would not have been held confidential from the primary clients. That is exactly the situation here. As we have previously found, any representation of Holiday Inns was with knowledge on the part of Holiday Inns that the Kaye, Scholer firm and Mr. Handler and Ms. Head were still representing the interests of IAHI and would continue to do so. In addition, they had no reason to believe that any information which the Kaye, Scholer firm received from them would be kept confidential from the IAHI, Kaye, Scholer's primary client. We, therefore, think that the same law should apply here as in the *Allegaert* case. This is a variation from the approach set out by the Fifth Circuit in the *Wilson P. Abraham* case, but we think that the Fifth Circuit recognized that there can be different classifications of representation set in disqualification cases by their affirmance of *George v. LeBlanc*, supra. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979), does not require a different result because the Court there found disqualification of an attorney proper where he had jointly represented all of the parties until a falling-out of the family occurred. The court agreed with the district court that because of the joint representation of both parties to the suit, it would be a breach of the ethical duty of the attorney, because of the confidential relationship he had had with all the parties, to allow him to

subsequently represent one of them against the other. We do not have a similar joint representation and a substantial relationship here as in the *Brennan's, Inc.* case.

We should note that if we felt compelled to follow the substantial relationship test, our result would not be different. We do not see the issues in this case as substantially related to those in the AMI case, especially the issue which the Kaye, Scholer firm was involved in on the appeal. We are not here involved with the non-Holiday Inns clause, but rather with whether there is a violation of plaintiff's franchise by Holiday Inns. We do not consider these matters similar enough to require disqualification of the Kaye, Scholer firm or of Mr. Handler and Ms. Head. Accordingly,

IT IS THE ORDER OF THE COURT that the motion of Holiday Inns, Inc., for disqualification be, and the same is hereby, DENIED.