IN RE : CABE & CATO, INC., Debtor.

### CASE NO. 13–62455–CRM

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed October 30, 2014

Filed October 31, 2014

Joseph J. Burton, Jr., Mozley, Finlayson & Loggins, LLP, Atlanta, GA, for Debtor.

## ORDER

C. Ray Mullins, U.S. Bankruptcy Court Judge

**THIS MATTER** is before the Court on the Chapter 7 Trustee's Motion to Disqualify Counsel (the "Motion") (ECF No. 115). The Court held an evidentiary hearing on the Motion, after which the Court took the matter under advisement. For the reasons stated below, the Court grants the Motion.

## I. FACTS

The Debtor, Cabe & Cato, Inc., sold, leased, serviced, and maintained automated teller machines. Jim Cabe and Warren Cato are the sole owners and principals of the Debtor.

In 2007, the Debtor and two co-investors filed a lawsuit against Andante Development, LLC ("Andante") in Walton County, Florida (the "State Court Action"). Andante counterclaimed. Following a three-day jury trial on dueling breach of contract claims, the Florida court entered a judgment jointly and severally against the Debtor and two other judgment debtors in favor of Andante Development, LLC for $1,394,899.59.[1]

At approximately the same time, Burr & Forman ("B & F") started providing legal services to the Debtor. B & F and the Debtor discussed forming a new company, and on July 30, 2010, days after judgment was entered in the State Court Action, B & F filed articles of incorporation and was granted a certificate of organization for a new Georgia limited liability company: Turnkey ATM Solutions, LLC ("Turnkey"). A B & F attorney, Edward H. Brown, was listed as the registered agent. Like the Debtor, Turnkey sells, leases, services, and maintains ATMs. Trunkey has the same principal mailing address as the Debtor, and Mr. Cabe and Mr. Cato are Turnkey's only members.

B & F represented the Debtor, Turnkey, Mr. Cabe, and Mr. Cato in a sale transaction in which Debtor transferred all, or nearly all, of its ATM machines and the cash then in those machines to Turnkey (the "Sale Transaction"). B & F drafted a bill of sale conveying the Debtor's equipment to Turnkey; the agreement was executed on September 24, 2010.

Andante challenged the Sale Transaction by filing a lawsuit against Debtor, Turnkey, Mr. Cabe and Mr. Cato in the District Court for the Northern District of Florida in November 2012. Andante alleged that the Sale Transaction was a fraudulent conveyance and asserted claims under Florida's fraudulent transfer act (the "District Court Action"). On June 3, 2013, Andante filed a motion to appoint a receiver in the District Court Action. The

1. The judgment debtors had previously paid $680,000.00, so the court ordered that the remaining amount due to Andante was $714,890.59 plus post judgment interest to accrue at 6% per year. The Florida court later entered an order granting Andante prejudgment interest in the amount of $348,465.00.

District Court Judge ordered the defendants to that action to file a response by June 7, 2013.

While the District Court Action was pending, the Debtor agreed to indemnify Mr. Cabo and Mr. Cato for legal fees they incurred in litigation related to Andante's collection efforts. In February 2013, Mr. Cabe and Mr. Cato, as officers of the Debtor, also assigned a $100,000 note receivable then owed to Debtor to B & F to cover their attorney's fees.

On June 5, 2013, Debtor filed bankruptcy. The United States Trustee appointed Barbara Stalzer, Jr. as the interim trustee, and she became the permanent trustee (the "Trustee") at the chapter 7 meeting of creditors on July 1, 2013.

On July 29, 2013, the Court entered an order authorizing mediation. ECF No. 46. The parties appeared to reach an agreement, and the Trustee filed a motion to approve compromise on September 17, 2013. ECF No. 48. In the motion, the Trustee expressly reserved her claims against B & F. The motion stated that, "While the Trustee (and Andante) are settling claims against the Defendants, the Trustee is not settling and specifically reserves any and all claims which the estate may possess against B & F, ... while Trustee and Andante have specifically agreed to release the Defendants as set forth herein, Trustee does not agree that the settlement with Defendants shall have any legal effect regarding Plaintiff's claims against B & F." ECF No. 48 at 4. Mr. Cabe, Mr. Cato, Turnkey, and B & F filed objections to the motion. As a result, the Trustee withdrew the motion to approve compromise.

The Trustee then filed motions seeking documents and compelling attendance at Rule 2004 examinations directed to the Debtor, Mr. Cabe, Mr. Cato, Turnkey, and three B & F attorneys: Edward H. Brown, Jeffrey U. Beaverstock, and Jon Kane. The Court granted the motions, and the Trustee served subpoenas for the Rule 2004 examinations. Mr. Cabe, Mr. Cato, Turnkey, and B & F responded by filing motions to quash. The Court held a hearing on the motions to quash, during which it directed the respondents to produce all non-privileged documents and a privilege log. The Court further ordered the parties to have a meaningful discussion after the documents were produced about remaining discovery issues.

On August 20, 2014, the Trustee filed the Motion.[2] The Trustee seeks to disqualify B & F from representing Mr. Cabe, Mr. Cato, and Turnkey in this case. B & F filed a response to the Motion, and the Court held an evidentiary hearing on the Motion on Monday, September 15, 2014.

At the hearing, counsel for the Trustee began by stating that he was concerned with how B & F had handled the production of documents. He noted that production had been piecemeal, and that he had received an about 600 additional pages of documents on Thursday and approximately 200 additional pages on Friday before the Monday hearing. Mr. Patterson stated that the Trustee intended to file a lawsuit against Mr. Cabe, Mr. Cato, Turnkey, B & F, and several B & F attorneys.

Mr. Kane stated that B & F had complied with the Trustee's requests for documents and had produced thousands of pages of documents. Mr. Kane said that the Trustee was aware of B & F's involvement since it first filed a notice of appear-

---

**2.** The Trustee also filed a motion to shorten time. A hearing was set for August 27, 2014. B & F responded by filing an emergency motion to reconsider and asking for an opportunity to be heard. The Court scheduled an evidentiary hearing on the motion to disqualify.

ance just two weeks after the Debtor filed bankruptcy and that, given the time that had passed between when B & F first entered an appearance and when the Trustee filed the Motion, the Trustee waived her right to claim disqualification. While Mr. Kane acknowledged that the Trustee had previously raised claims against B & F, he argued that the Trustee waived her right to claim disqualification. Mr. Kane stated that the Trustee was trying to use disqualification as a litigation tool and that his clients would be harmed if B & F was disqualified. He noted that they had already spent over $200,000 in connection with the case. Mr. Kane succinctly stated B & F's involvement in the case did not pose an ethical problem—that B & F was permitted to represent the Debtor, Mr. Cabe, Mr. Cato, and Turnkey in the Sale Transaction, and that it should be permitted to continuing representing Mr. Cabe, Mr. Cato, and Turnkey against the Trustee. Mr. Kane concluded that if a B & F attorney is called to testify as a witness, disqualification should not be imputed to the firm.

The Trustee testified that she had been a chapter 7 trustee for twenty-four years; in all those years, she had only filed a motion to disqualify counsel two times. She stated that she tried to mediate the matter "as quickly as possible," and, when mediation failed, she sought discovery from B & F. The Trustee stated that she was concerned that the production was slow, piecemeal, and possibly incomplete; she did not know whether B & F had produced all non-privileged documents in its possession. The Trustee said that just two weeks before the hearing, Mr. Kane had invited her to review B & F's files at his office in Orlando, Florida.

Counsel for the Trustee asked:

Q. Did you ever tell B & F & Forman that you were okay with them representing Mr. Cabe, Mr. Cato, Turnkey, and themselves, in connection with any litigation that you might bring?

A. I did not.

Q. Did you ever tell them that you were okay with them representing parties adverse to you as their ex-client?

A. I did not.

Q. Are you okay with them representing the parties adverse to you?

A. I am not.

Q. To your knowledge, did you ever tell them that you waive the conflict that you see in this case?

A. I did not.

Tr. at 34:16–35:4, ECF No. 148.

On cross examination, Mr. Kane asked the Trustee why she did not immediately seek to disqualify B & F. The Trustee stated that she "was trying to get a handle on all of the facts" when the Debtor filed bankruptcy and that she wanted to be on solid ground before filing such a motion. Tr. at 41:2–19. Mr. Kane noted that the Trustee made it clear at the mediation that she had claims against B & F and asked the Trustee whether she was then aware of a potential conflict of interest. The Trustee stated that she "might have been" but that it was not "really high on the radar screen" since she was hoping to "work together and try to figure out something that benefits everybody." Tr. at 42:16–22. The Trustee testified that she reserved her rights against B & F in the motion to settle she filed in September 2013, and that she again noted in her Interim Report filed on October 29, 2013 that she had claims against B & F. Tr. at 68:11–20.

The Trustee testified that she had concerns about B & F's continued involvement in the case. For one, discovery had been litigious and had run up administrative costs; she expected that to continue with B & F in the case. For another, she was

concerned that B & F had specialized information that could be used against the Trustee. After hearing evidence and argument from counsel, the Court took the matter under advisement.

On September 23, 2014, the Trustee filed a complaint against B & F, Mr. Cabe, Mr. Cato, and Turnkey, to avoid and recover allegedly fraudulent transfers and damages on related claims.[3] Defendants have not yet answered the complaint; an answer or responsive pleading is due November 21, 2014.

## II. JURISDICTION

■ A motion to disqualify counsel is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A). *In re Meridian Auto. Syss.—Composite Operations, Inc.,* 340 B.R. 740 (Bankr.D.Del.2006); *see also Century Indem. Co. v. Congoleum Corp. (In re Congoleum Corp.),* 426 F.3d 675, 686 (3d Cir.2005) ("one of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it."); *In re Johore Inv., Co.,* 157 B.R. 671, 674 (D.Haw.1985) ("a motion to disqualify counsel of a major secured creditor is a matter integrally tied to the administration of the estate, and disposing of such a motion is clearly a necessary function of the bankruptcy judge in presiding over the orderly administration of the estate.").

## III. ANALYSIS

■ Generally, a party is entitled to the counsel of his choice. As the Eleventh Circuit Court of Appeals explained, "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons ex-

ist. A disqualification order is a harsh sanction, often working substantial hardship on the client and should therefore be resorted to sparingly. *Herrmann v. GutterGuard, Inc.,* 199 Fed.Appx. 745, 752 (11th Cir.2006). However, the right to choose counsel "must be balanced against the need to maintain the highest standards of the profession." *Id.*

■ A lawyer has many responsibilities, the most important of which is to carry out his or her duties ethically and responsibly. There are two main ethical duties: the duty of confidentiality and the duty of loyalty. The first, the lawyer's duty of confidentiality, fosters full and open communication between client and counsel. *See Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis),* 347 B.R. 679, 689 (9th Cir. BAP 2006). The second, the duty of undivided loyalty to the client, is necessary not only to protect the client but also to preserve public trust in the scrupulous administration of justice and the integrity of the bar. *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis),* 347 B.R. 679, 689 (9th Cir. BAP 2006) (citation omitted). When determining whether to disqualify counsel, a court must balance competing interests, namely a client's right to choose counsel against these ethical duties. *See Adkins v. Hosp. Auth. of Hous. Cnty.,* Case No. 5:04–CV–80, 2009 WL 3428788, *6, 2009 U.S. Dist. LEXIS 97361, *19 (M.D.Ga. Oct. 20, 2009) (citing *Nuri v. PRC, Inc.,* 5 F.Supp.2d 1299, 1303 (M.D.Ala.1998)).

■ A party bringing a motion to disqualify bears the burden of proving the grounds for disqualification. *In re Bellsouth Corp.,* 334 F.3d 941, 961 (11th Cir.

---

**3.** The Trustee asserts claims for aiding and abetting such transfers, wrongful distributions to shareholders, breach of fiduciary duties and aiding and abetting such breach civil conspiracy, unjust enrichment, professional negligence and malpractice, successor liability, equitable subordination, costs, and punitive damages. The Trustee also demanded a jury trial.

2003). The moving party must have "compelling reasons" to disqualify counsel. *Id.* Doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification. *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978). Where a law firm has jointly represented a corporation and other clients before a bankruptcy case, the trustee appointed in the corporation's chapter 7 case stands in the shoes of the corporation as a former client of the law firm for the purposes of bringing a motion to disqualify the law firm. *In re Jaeger,* 213 B.R. 578, 592 (Bankr.C.D.Cal.1997).

▮ Motions to disqualify are governed by two sources of authority. *Herrmann v. GutterGuard, Inc.,* 199 Fed.Appx. 745 (11th Cir.2006). Attorneys practicing in this Court are bound by the Georgia Rules of Professional Conduct, contained in the Rules and Regulations of the State Bar of Georgia, and judicial decisions interpreting those rules and standards. BLR 9010-3.[4] Attorneys are also bound by federal common law and the American Bar Association Model Rules of Professional Conduct, to the extent that they are not inconsistent with the Georgia Rules. *Adkins,* 2009 WL 3428788, at *7, 2009 U.S. Dist. LEXIS 97361, at *21 (citing *Herrmann,* 199 Fed.Appx. at 752).

### a. Waiver

▮ B & F contends that, given the time between when B & F first entered an appearance in the bankruptcy case and when the Trustee filed the Motion, the Trustee waived her right to claim disqualification. Generally, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034 (N.D.Ga.1981). A failure to make a reasonably prompt motion to disqualify may result in the conflict being waived. *Id.* The rational of this rule is to prevent a litigant from using the motion as a tool to deprive his opponent counsel of his choice after completing substantial preparation of the case. *Cox v. Am. Cast Iron Pipe Co.,* 847 F.2d 725, 729 (11th Cir.1988) (quoting *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034 (N.D.Ga.1981)).

Courts have found waiver where the moving party delays moving for a disqualification for an extended period of time or files a motion on the eve of trial. For example, in *Cox,* 847 F.2d 725, the Eleventh Circuit found that the moving party waived its right to file a motion to disqualify where it had every opportunity to object but failed to do so. *Id.* at 730–31. The *Cox* litigation was more than a decade old, and the district court had previously raised the disqualification issue on its own. *Id.* The moving party had responded to the court, but it failed to voice concern about the representation. *Id.* When it later filed a motion to disqualify, 32 days before

4. Bankruptcy Local Rule 9010-3 provides that the United States District Court for the Northern District of Georgia Local Rules 83.1C and 83.1F are applicable to and govern all actions and proceedings in the Bankruptcy Court. Local Rule 83.1C sets forth the standard of Professional Conduct and provides: All lawyers practicing before this court shall be governed by and shall comply with the specific rules of practice adopted by this court and, unless otherwise provided, with the Georgia Rules of Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards.
LR 83.1C. Accordingly, the Georgia Rules of Professional Conduct govern attorney conduct. The Supreme Court of Georgia adopted the Georgia Rules of Professional Conduct on June 12, 2000, thereby replacing the Code of Professional Responsibility and the Standards of Conduct. The Georgia Rules of Professional Conduct are set forth in Rule 4–102 of the Rules of the State Bar of Georgia.

trial, the moving party was unable to explain why it had remained silent when the district court previously raised the issue. The Eleventh Circuit concluded that the moving party had waived its right to seek disqualification. *Id.* at 731.

 "Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive." *Chemical Waste Mgmt., Inc. v. Sims,* 875 F.Supp. 501, 505 (N.D.Ill.1995). The court must consider the length of the delay in light of the circumstances of the particular case. *Shuttleworth v. Rankin–Shuttleworth of Georgia, LLC,* 328 Ga.App. 593, 759 SE.2d 873 (2014). These factors should be weighed against the seriousness of the conflict alleged and the extent to which the public's confidence in the administration of justice would be eroded if the motion was denied. *Id.* (citing *Ga. Baptist Health Care Sys., Inc. v. Hanafi,* 253 Ga. App. 540, 559 S.E.2d 746, 748 (2002)).

 The Trustee filed the Motion on August 20, 2014 more than a year after the Debtor filed bankruptcy but before an adversary proceeding was filed. Discovery is ongoing in the bankruptcy case, and litigation in the adversary proceeding is at a very early stage. Whereas the moving party in *Cox* filed its motion to disqualify just weeks before a scheduled trial, this adversary proceeding is far from over—it just began. The Trustee filed her complaint on September 23, 2014, and the Defendants, including B & F, have not yet answered the complaint.

At the September 15 hearing, Mr. Kane asked the Trustee why she did not immediately seek to disqualify B & F. The Trustee stated that she "was trying to get a handle on all of the facts" when the Debtor filed bankruptcy and that she wanted to be on solid ground before filing such a motion. Tr. at 41:2–19. Mr. Kane noted that the Trustee previously raised concerns about B & F's involvement, and

B & F acknowledges in its Response to the Motion that "[a]t the mediation, the Trustee raised her claims against B & F and noted a potential conflict of interest." Resp. to Mot. at 6, ECF No. 135. The Trustee stated that she did not then seek to disqualify B & F because she was hoping to "work together and try to figure out something that benefits everybody." Tr. at 42:16–22. The Trustee did, however, express concerns about B & F's representation in the motion to approve compromise she filed with the Court last fall. The motion stated that, "While the Trustee (and Andante) are settling claims against the Defendants, the Trustee is not settling and specifically reserves any and all claims which the estate may possess against B & F, . . . while Trustee and Andante have specifically agreed to release the Defendants as set forth herein, Trustee does not agree that the settlement with Defendants shall have any legal effect regarding Plaintiffs claims against B & F." ECF No. 48 at 4. B & F acknowledges that, with this language, "the Trustee sought to preserve her rights to pursue claims against [B & F.]" Resp. to Mo. at 6, ECF No. 135. The Trustee again noted that she had claims against B & F in her Interim Report, filed on October 29, 2013. ECF No. 56. This demonstrates that, rather than consenting to B & F's representation, the Trustee repeatedly voiced her concern over B & F's involvement in the case.

Considering that the Trustee filed the Motion before initiating an adversary proceeding, that she has repeatedly voiced concern over B & F's role in this case, and that the conflict alleged is a serious one, the Court finds that the Trustee did not waive the disqualification issue.

### b. Rule 1.7: General Conflict of Interest Rule

The Trustee contends that B & F should be disqualified because B & F's continued participation in this bankruptcy case and

related adversary proceeding presents a conflict of interest under Georgia Rule of Professional Conduct Rule 1.7.[5] Rule 1.7 provides a general conflict of interest rule and precludes the representation of a client if there is a significant risk that the lawyer's duties to a former client will materially and adversely affect the representation of the client. The rule states that:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).[6]

Ga. Rules of Prof'l Conduct r. 1.7.

■■■■■ The principal underlying this rule is clear. Simply put, " 'a lawyer should always act in a manner consistent with the best interests of his client.' It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client-undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others." *Paul v. Smith, Gambrell & Russell,* 267 Ga.App. 107, 599 S.E.2d 206, 209 (2004) (internal citation omitted). Loyalty to a client is "impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests." Ga. Rules of Prof'l Conduct r. 1.7 cmt. 4. Thus, if the interests of another client may impair the lawyer's independent professional judgment or in anyway foreclose alternatives that would otherwise be available to the client, the lawyer is prohibited from undertaking simultaneous representation. *Adkins,* 2009 WL 3428788, at *8, 2009 U.S. Dist. LEXIS 97361 at *25 (citing Ga. Rules of Prof'l Conduct r. 1.7 cmt. 4).

B & F formerly represented the Debtor in the matters described above. If the firm still represented the estate, Rule 1.7 provides that it could not represent Mr. Cabe, Mr. Cato, and Turnkey. B & F, however, no longer represents the Debtor or the estate and disqualification under Rule 1.7 is not warranted.

### c. Rule 1.9: Duties to Former Clients

■■■ The Trustee argues that Rule 1.9 prohibits B & F from representing Mr.

---

5. Before reaching the substantive issues, the Court must decide whether the Trustee's counsel has standing to bring the present motion. *Bernocchi v. Forcucci,* 279 Ga. 460, 614 S.E.2d 775, 779 (2005); Ga. Rules of Prof'l Conduct r. 1.7 cmt. 15. For an attorney to have standing to raise the issue of an opposing lawyer having a conflict of interest, "there must be a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice." *Id.* The Trustee's counsel has satisfied this requirement.

6. Rule 1.7 continues:
b. If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives informed consent, confirmed in writing, to the representation after:
1. consultation with the lawyer, pursuant to Rule 1.0(c);
2. having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation, and
3. having been given the opportunity to consult with independent counsel.
c. Client informed consent is not permissible if the representation:
1. is prohibited by law or these Rules;
2. includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or
3. involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.
The maximum penalty for a violation of this Rule is disbarment.
Ga. Rules of Prof'l Conduct r. 1.7.

Cabe, Mr. Cato, and Turnkey in the bankruptcy case and related adversary proceeding. Rule 1.9(a) extends the protections of Rule 1.7 to former clients and prevents switching sides in the same or a related matter.

### i. Legal analysis under Rule 1.9

■ Georgia Rule of Professional Conduct 1.9 deals with the duties owed to former clients. Under this rule, an attorney owes a duty of loyalty not only to his current clients, but also to his former clients. The rule provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ga. Rules of Prof'l Conduct r. 1.9(a). The rule helps keep attorneys from acting against the interests of a former client by later representing an adverse party in a matter involving substantially the same relevant facts. Thus, "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited." *Id.*, cmt. [2].

■ The rule recognizes that a client has a right to expect the loyalty of his attorney in the matter for which he is retained. If the attorney were allowed to "switch sides," a client might be reluctant to divulge confidential information which, in turn, might someday be used against the client. The preservation of client confidences and the maintenance of undivided loyalty of the attorney to the client, both during and after representation, are essential to the attorney-client relationship. *Waldschmidt v. Compcare Health Servs. Ins. Corp. (In re Peck Foods)*, 196 B.R.

434, 437 (Bankr.E.D.Wis.1996); *In re Meridian Auto. Syss.–Composite Operations, Inc.*, 340 B.R. 740, 747 (Bankr.D.Del.2006). That the duty of loyalty extends to former clients is an old concept grounded in principles of agency law.

The idea that lawyers owe duties to ex-clients is neither controversial nor novel. It is an outgrowth of the agency law principle that an agent's duties to his principal continue, albeit in reduced scope, after the agency relationship has been terminated. A lawyer has no duty to accept a particular client or matter, but once having accepted, she loses a certain amount of freedom to take on new matters, even when the first representation is over. The conflict of interest rules thus give both present and former clients a limited form of veto over their lawyer's choice of work.

*Webb v. E.I. Du Pont de Nemours & Co.*, 811 F.Supp. 158, 164 (D.Del.1992) (citing Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering*, § 1.9.103 (2nd ed. Supp. 1991)).

The principles embodied in Rule 1.9 not only protect former clients, but are also essential to maintaining public confidence in the integrity of our adversarial system of criminal justice. *Registe v. State*, 287 Ga. 542, 697 S.E.2d 804 (2010). The rule helps maintain client confidences, which in turn bolsters public confidence in the way attorneys conduct their business and client expectations in seeking counsel. *See Am. Airlines*, 972 F.2d at 619–20 ("Disqualification rules not only preserve the purity of particular trials but also unavoidably affect relationships among attorneys and clients in general. This court bars attorneys from appearing in substantially related matters not only to protect individual parties against the adverse use of information but also 'to aid the frank exchange between attorney and client.'" (citations omitted)).

Disqualification under Rule 1.9 is appropriate if the moving party establishes that: (1) the moving party and opposing counsel had a prior attorney-client relationship; (2) the present matter is substantially related to the matter in which counsel previously represented the moving party; 3) the interests of the moving party and opposing counsel's current clients are materially adverse; and 4) the moving party does not consent. Ga. Rules of Prof'l Conduct r. 1.9(a).

### 1. Attorney-client relationship

The Trustee has established that an attorney-client relationship existed between B & F and the Debtor. In 2010, B & F started providing legal services to the Debtor. B & F and the Debtor discussed forming a new company, and on July 30, 2010, B & F helped create Turnkey. B & F then represented the Debtor in the Sale Transaction. The Debtor also agreed to indemnify Mr. Cabo and Mr. Cato for B & F's legal fees and assigned a $100,000 note receivable to B & F to cover Mr. Cabe and Mr. Cato's attorney's fees. The Trustee now stands in the Debtor's shoes as a former client of B & F. *In re Jaeger*, 213 B.R. 578, 592 (Bankr.C.D.Cal.1997); *c.f. Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (explaining that any privilege relating to Debtor's representation passed to the Trustee on the petition date). There is a prior attorney-client relationship between the Trustee and B & F to satisfy the first requirement of Rule 1.9.

### 2. Substantially related matters

Once an attorney-client relationship is established, the Court must determine whether the prior and current matters are substantially related. The Rules do not define what constitutes a "matter" for conflict-of-interest purposes. Comment 2 to Rule 1.9, however, provides that "the scope of a 'matter' ... depends on the facts of a particular situation or transaction. The

lawyer's involvement in a matter can also be a question of degree." Ga Rules of Prof'l Conduct r. 1.9 cmt. 2. The comments are clear, though, that "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited." *Id.* "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.*

The comments to Rule 1.9 further explain that matters are "substantially related" if they are connected.

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter....

GA Rules of Prof'l Conduct r. 1.9 cmt. 3.

Cases may be "substantially related" if they have material and logical connections. *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 22, 694 S.E.2d 346 (Ga.2010). For example, in *In re Jaeger*, 213 B.R. 578 (Bankr.C.D.Cal.1997), the bankruptcy court disqualified a law firm from representing defendants in a fraudulent transfer action brought by the chapter 7 trustee where the law firm had represented the debtors in state court litigation on the same cause of action. The court found a congruency of the issues in the separate matters involving the same firm. *Id.* at 590 (interpreting the Model Rule with the same language as Ga. Rules of Prof'l Conduct r. 1.9). Similarly, the bankruptcy court for the Southern District of New York disqualified a law firm from

representing defendants in an adversary proceeding to recover fraudulent transfers and transfers in breach of fiduciary duties in *In re I Successor Corp.*, 321 B.R. 640 (Bankr.S.D.N.Y.2005) (interpreting the Model Rule). The court found that the law firm did switch sides in matters that were substantially related—it had previously represented the debtor on at least two acquisitions and later represented directors and officers adverse to the debtor on claims that involved the two earlier transactions. *Id.* at 658.

 Matters may also be substantially related if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. Ga. Rules of Prof'l Conduct r. 1.9 cmt. 3; *see also In re Meridian Auto. Syss.–Composite Operations, Inc.*, 340 B.R. 740, 747 (Bankr.D.Del.2006) (citing Model Rules of Prof'l Conduct r. 1.9 cmt. 3).[7] In providing two distinct grounds for disqualification, the Rules expand the protections for former clients. *In re Am. Airlines, Inc.*, 972 F.2d 605, 615 (5th Cir.1992). Courts note that this rule prevents attorneys from later using not only factual knowledge but also from using legal knowledge to a former client's disadvantage. "Adverse use of confidential information is not limited to disclosure. It includes knowing ... what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." *Webb v. E.I. DuPont de Nemours & Co.*, 811 F.Supp. 158, 162 (D.Del.1992).

B & F does not dispute that the matters are substantially related. Instead, B & F argues that when it represented the Debtor in the Sale Transaction it was also representing Mr. Cabe, Mr. Cato, and Turnkey and that the substantial relationship test does not apply in the case of prior joint representation. In support of this argument, B & F relies on *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 479 F.Supp. 465, 468–69 (E.D.La.1979). Resp. to Mot. at 19, ECF No. 135.

In *Domed Stadium Hotel*, an attorney, who had jointly represented a franchisor and an association of franchisees for the purpose of appealing an adverse antitrust decision brought by a third party, was not disqualified from subsequently representing a franchisee against the franchisor. 479 F.Supp. 465. The court in *Domed Stadium Hotel* questioned whether there

---

**7.** Rule 1.9 creates an "irrefutable presumption that confidences were disclosed" between the client and the attorney during the former period of representation. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *see also Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir.1988). A party seeking to disqualify counsel is not required to point to specific information revealed to the attorney that may be relevant to the pending case. *Adkins v. Hosp. Auth. of Hous. Cnty.*, Case No. 5:04–CV–80, 2009 WL 3428788, 2009 U.S. Dist. LEXIS 97361 (M.D.Ga. Oct. 20, 2009) (citing *Tilley v. King*, 190 Ga. 421, 9 S.E.2d 670 (1940) ("[I]f the two cases are substantially related, it is no answer for the attorney ... to say ... that he had no confidential information from his client."); *Summerlin v. Johnson*, 176 Ga.App. 336, 335 S.E.2d 879 (1985)). "To require a client to support his disqualification motion by revealing the very confidences he seeks to protect through his motion would be incompatible with the ethical standards governing the legal profession, and could result in the client giving his attorney less than complete information for fear of later being forced to reveal that information." *Islander East Rental Program v. Ferguson*, 917 F.Supp. 504, 513 (S.D.Tex.1996). Thus, in order to aid the frank exchange between attorney and client, "[t]he Court must presume that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation." *Dodson v. Floyd*, 529 F.Supp. 1056, 1060 (N.D.Ga.1981).

was even a "former client" relationship. *Id.* at 468. It then followed the reasoning of *Allegaert v. Perot,* 565 F.2d 246 (2d Cir.1977), in which the Second Circuit Court of Appeals stated, "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Id.* at 250 (emphasis in original). As between joint clients there can be no "confidences" or "secrets" unless one client manifests a contrary intent. *See Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970), *cert. denied sub nom. Garner v. First Am. Life Ins. Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). Thus, when prior representation is joint, neither party can assert the attorney-client privilege against the other as to matters comprehended by that joint representation.

Other decisions explain that while information imparted for the mutual benefit of joint clients is not privileged against either of them, this does not end the analysis. *Felix v. Balkin,* 49 F.Supp.2d 260, 270 (S.D.N.Y.1999). The court in *Allegaert* addressed only the issue of confidential communications under Canon 4 of the ABA Code of Professional Responsibility. Rule 1.9(a) offers a much broader concept—that of continuing fidelity to a former client, a duty of loyalty—that extends beyond the preservation of confidential information. *PGH Int'l v. Gabor Shoes AG (In re PGH Int'l),* 222 B.R. 401, 408 (Bankr.D.Conn. 1998).

In *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979),[8] the Fifth Circuit Court of Appeals explained that disqualification based on an earlier joint representation may be warranted despite a waiver of the attorney-client privilege. In *Brennan's,* an attorney had jointly represented members of the Brennan family until the family members had a falling-out. The family split the family restaurant business in to two and, when a dispute developed over who owned registered service marks, one group sued the other for trademark infringement. The plaintiff filed a motion to disqualify the attorney from representing the defendants in the trademark suit. The defendants argued that there were no confidences as between joint clients and that, therefore, the attorney did not violate his ethical duty. *Id.* at 171. The Fifth Circuit Court of Appeals acknowledged that, assuming the prior representation was joint, the defendants were "quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation." *Id.* (citing *Garner,* 430 F.2d at 1103). The court went on, however, to state that "the ethical duty is broader than the evidentiary privilege." *Id.* at 172.

The court explained: "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client ..." *Id.* "The use of the word "information" in these [ethical rules] as opposed to "confidence" or "secret" is particularly revealing of the drafters' intent to protect all knowledge acquired from a client[.]" *Id.* Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it. *Id.* (citing *NCK Org. v. Bregman,* 542 F.2d 128, 133 (2d Cir.1976)). A client would feel

---

8. Decisions of the Fifth Circuit that existed on September 30, 1981 are binding on federal courts within the Eleventh Circuit. *Bonner v.* *City of Prichard,* 661 F.2d 1206 (11th Cir. 1981).

wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter. *Id.* The court concluded: "The need to safeguard the attorney-client relationship is not diminished by the fact that the prior representation was joint with the attorney's present client." *Id.*[9]; *see also Am. Airlines, Inc.,* 972 F.2d 605 (reviewing and explaining *Brennan's* ).[10]

 B & F is correct that if parties are jointly represented, they cannot later assert the attorney-client privilege against each other as to matters relating to the joint representation. However, as the Fifth Circuit explained in *Brennan's,* an attorney can be disqualified from a case if he chooses to represent a client adverse to his former client in the same or substantially related matter even if he formerly jointly represented both parties. *Brennan's* has not been overruled and is binding Eleventh Circuit authority. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981). Accordingly, even though the Trustee and Mr. Cabe, Mr. Cato, and Turnkey could not assert the attorney-client privilege against each other, the Court will consider whether the present matter is substantially related to the matter in which B & F previously represented the Debtor.

The Court finds that the matters in this bankruptcy case and related adversary proceeding are substantially related to the matters in which B & F previously represented the Debtor because the matters involve the same transaction or legal dispute. As in *Jaeger,* 213 B.R. 578, where the bankruptcy court disqualified a law firm from representing defendants in a fraudulent transfer action brought by the chapter 7 trustee after the law firm had represented the debtors in state court litigation on the same cause of action, there is a congruency of issues here.

In 2010, days after a judgment was entered against the Debtor in the State Court Action, B & F and the Debtor discussed forming a new company. B & F filed articles of incorporation and obtained a certificate of organization for Turnkey. B & F then provided legal advice to the Debtor about selling all or substantially all of its assets, and B & F drafted the bill of sale memorializing the Sale Transaction. B & F represented the Debtor in the Sale Transaction. B & F now seeks to represent parties adverse to the Debtor in an adversary proceeding on claims relating to the formation of Turnkey and the Sale Transaction. The legal advice B & F is now providing to Mr. Cabe, Mr. Cato, and Turnkey concerns the same issues, only this time B & F is advising the buyer in the Sale Transaction how to protect itself.

Moreover, there is a reasonable probability that information B & F obtained during its prior representation of the Debtor could be used to the Debtor's dis-

---

**9.** The Fifth Circuit Court of Appeals agreed with the district court that, because of the joint representation of both parties to the suit and the attorney's confidential relationship he had with all the parties, it would be a breach of the ethical duty of the attorney to allow him to subsequently represent one of them against the other. *Id.*

**10.** The *Domed Stadium Hotel* decision, on which B & F relies, acknowledged that while *Brennan's* involved a joint representation,

there was a substantial relationship between the matters and that disqualification was proper under the circumstances. *Domed Stadium Hotel,* 479 F.Supp. at 469. The court in *Domed Stadium Hotel* found that even if it applied the substantial relationship test, the issues in the matters were not substantially related because the matters were not similar enough and absolutely no confidential information was exchanged with the attorneys in question. *Domed Stadium Hotel,* 479 F.Supp. at 468–69.

886

advantage in this litigation. The Trustee testified that she was concerned that B & F had specialized information that could be used against the Trustee. Since B & F represented the Debtor beyond the Sale Transaction, B & F likely knows what the Debtor perceived to be its strengths and weaknesses and, accordingly, what lines of attack to abandon and what lines to pursue in the bankruptcy and related adversary proceeding. Because the bankruptcy case and adversary proceeding have material and logical connections to the matters in which B & F previously represented the Debtor, the Court finds that the matters are substantially related.

### 3. Materially adverse

The interests of B & F's current clients, Mr. Cabe, Mr. Cato, and Turnkey, are materially adverse to the interests of its former client. That Mr. Cabe, Mr. Cato, and Turnkey's are Defendants in an adversary proceeding filed by the Trustee demonstrates this. Accordingly, the third requirement of Rule 1.9 is met.

### 4. Informed consent

The Trustee does not consent to B & F's representation. The provisions of Rule 1.9 are for the protection of former clients and can be waived if the client gives informed consent. Ga. Rules of Prof'l Conduct r. 1.9 cmt. 9. Thus, a lawyer who has represented multiple clients in a matter cannot represent one of the clients against the others in the same or a substantially related matter after a dispute arises among the clients in that matter, unless all affected clients give informed consent, confirmed in writing. Ga. Rules of Prof'l Conduct r. 1.9 cmt. 1.[11]

The Trustee testified that she has never consented to B & F's representation in

this case. At the evidentiary hearing, counsel asked the Trustee:

Q. Did you ever tell B & F & Forman that you were okay with them representing Mr. Cabe, Mr. Cato, Turnkey, and themselves, in connection with any litigation that you might bring?

A. I did not.

Q. Did you ever tell them that you were okay with them representing parties adverse to you as their ex-client?

A. I did not.

Q. Are you okay with them representing the parties adverse to you?

A. I am not.

Q. To your knowledge, did you ever tell them that you waive the conflict that you see in this case?

A. I did not.

Tr. at 34:16–35:4, ECF No. 148.

The Trustee's testimony demonstrates that she has not consented to B & F's involvement in the case. B & F has not obtained informed consent in writing from its former client that would allow B & F to represent Mr. Cabe, Mr. Cato, and Turnkey in the bankruptcy case and related adversary proceeding.

### ii. Additional Factors

Some courts have weighed additional factors to determine whether disqualification is appropriate under Rule 1.9, including: (1) whether the conflict might affect the pending litigation; (2) at what stage of litigation the disqualification issue was raised; (3) whether other counsel can handle the matter; (4) the appearance of impropriety; and (5) the costs of disqualification. *See Adkins*, 2009 WL 3428788, at *4, 2009 U.S. Dist. LEXIS 97361 at *13

11. Rule 1.0(h) defines "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reason-

ably available alternatives to the proposed course of conduct." Ga. Rules of Prof'l Conduct r. 1.0(h). Rule 1.7(b) describes the general process for obtaining informed consent. Ga. Rules of Prof'l Conduct r. 1.7(b).

(M.D.Ga. Oct. 20, 2009). These factors weigh in favor of disqualification here.

That the Trustee raised the disqualification issue early in litigation weighs in favor of disqualification. The Trustee filed the Motion before filing an adversary proceeding. She has since filed a complaint, but the Defendants have not yet answered the complaint. Disqualification would cause some disruption but this case is far from over—it just started. Counsel has admitted that hurdles will arise if B & F's attorneys are called to testify at trial and that B & F attorneys may be witnesses in the related adversary proceeding. The Trustee also testified that discovery had been litigious and will likely continue to be with B & F in the case. Such issues would obviously complicate this case and may ultimately derail this litigation. Since the Trustee just recently filed a complaint, counsel may still enter this case and provide Mr. Cabe, Mr. Cato, and Turnkey with competent and effective representation.

■ The appearance of impropriety also weighs in favor of disqualification. The appearance of impropriety is a longstanding principle that was formerly its own Canon under the ABA Code of Professional Responsibility. *See* ABA Code of Prof'l Responsibility Canon 9 (1970) (attorneys "should avoid even the appearance of professional impropriety."); *see also Woods v. Covington County Bank*, 537 F.2d 804, 812–13 (5th Cir.1976) (discussing the Canon). While the mere appearance of impropriety is no longer grounds for disqualifying a lawyer from representing a party to a lawsuit, the Court is entitled to consider the entire course of counsel's conduct in applying the relevant rules of pro-

fessional conduct. *See Herrmann*, 199 Fed.Appx. at 26. Avoiding the appearance of impropriety remains an important consideration for courts as it relates to protecting the integrity of the judicial system. *See Norman v. Elkin*, Case No. 06–005–LPS, 2014 WL 556081, *6–7, 2014 U.S. Dist. LEXIS 16172, *20–21 (D.Del. Feb. 10, 2014) (citing *Webb v. E.I. Du Pont de Nemours & Co., Inc.*, 811 F.Supp. 158, 160 (D.Del.1992) ("a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety because the courts have a responsibility to maintain confidence in the legal profession.")).

Here, there is a reasonable possibility that a specific impropriety occurred—the Trustee alleges in her complaint that B & F mishandled the Sale Transaction. The Trustee also testified that she had concerns about B & F's continued involvement in the case and its interest in its legal fees.[12] Loyalty and independent judgment are essential elements in a lawyer's relationship to a client, and B & F's conduct creates a perception that its ability to carry out its responsibilities with impartiality may be impaired.

That the Trustee raised the issue at an early stage in the litigation, that other counsel can still enter the case and handle the matter, and that there is a strong appearance of impropriety all weigh in favor of disqualification here.

### iii. Conclusion

Pursuant to Rule 1.9, B & F, which previously represented the Debtor, cannot represent Mr. Cabe, Mr. Cato, and Turnkey in the same or a substantially related matter in which the interests of its cur-

---

12. More recently, B & F filed a motion for sanctions on behalf of Mr. Cabe and Mr. Cato against a creditor for actions the creditor took against two non-debtors, Mr. Cabe and Mr. Cato, who are not protected by the automatic stay that went into effect when Debtor filed bankruptcy. ECF No. 141. That B & F filed the motion suggests that B & F's close relationship with Mr. Cabe and Mr. Cato has influenced its legal conduct.

rent clients are adverse to the interests of its former client absent informed consent, confirmed in writing. The Trustee has demonstrated that the criteria for disqualification under Rule 1.9 are present here. First, the Trustee, standing in the Debtor's shoes, and B & F had a prior attorney-client relationship. Second, the present matter is substantially related to the matter in which B & F previously represented the Debtor because they involve the same transactions and legal disputes. Third, the interests of the Trustee and B & F's current clients are materially adverse. Fourth, the Trustee does not consent. The additional circumstances discussed above weigh in favor of disqualification.

The Court takes the issue of disqualification seriously and understands that B & F's current clients, Mr. Cabe, Mr. Cato, and Turnkey, may suffer as a result of the Court' conclusion that disqualification is necessary. However, to allow B & F to proceed to represent these parties would not only create an appearance of unfairness, but would also violate the ethical and professional standards governing the practice of law. While the Court recognizes the importance of a client's right to representation by attorney of his choice, the Court nonetheless concludes that disqualification is required under Rule 1.9.

### b. Rule 1.10: Imputed Disqualification

▮ The Trustee argues that the conflict should be imputed to the entire firm pursuant to Georgia Rule of Professional Conduct 1.10 and that no B & F attorney should be permitted to represent Mr. Cabe, Mr. Cato, and Turnkey in this bankruptcy and related adversary proceeding.

▮ Rule 1.10(a) states: "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule ... 1.9...." Ga. Rules of Prof'l Conduct r. 1.10(a). The rule imputes a lawyer's disqualification under Rule 1.9 to all other lawyers associated with such lawyer's firm; any conflict of interest attributable to one attorney imputes equally to his current partners and employees. *See Freund v. Butterworth*, 165 F.3d 839, 863 (11th Cir. 1999), *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir.1988); *Rescigno v. Vesali*, 306 Ga.App. 610, 703 S.E.2d 65, 69 (2010) ("if one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification."). Imputed disqualification, also referred to as "vicarious disqualification," "occurs when one attorney could handle the matter if he were a sole practitioner but is prohibited [from doing so] because of a relationship with a partner or an associate who is barred from the same representation." *Hunter, Maclean, Exley & Dunn, P.C. v. St. Simons Waterfront, LLC*, 317 Ga.App. 1, 730 S.E.2d 608, 621 (2012) (citing J. Randolph Evans & Shari L. Klevens, *Georgia Legal Malpractice* 177 (2011)), *rev'd*, 293 Ga. 419, 746 S.E.2d 98 (2013). The rule derives from the duty of loyalty an attorney owes his client. Ga. Rules of Prof'l Conduct r. 1.10 cmt. 6 ("Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.").

Because the Court finds that disqualification is warranted under Rule 1.9, Rule 1.10(a) prohibits all lawyers at B & F from representing Mr. Cabe, Mr. Cato, and Turnkey in this case and the related adversary proceeding.[13]

---

**13.** The Trustee also states that B & F cannot represent Mr. Cabe, Mr. Cato, and Turnkey

## IV. Conclusion

For the reasons stated above, the Court finds that disqualification is appropriate. Accordingly.

**IT IS ORDERED** that the Motion be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that B & F must withdraw as counsel for Mr. Cabe, Mr. Cato, and Turnkey, and it is hereby relieved of further obligations in this case. Mr. Cabe, Mr. Cato, and Turnkey are ordered to retain replacement counsel.

**IT IS ORDERED.**

because it is likely that one or more B & F attorneys or former B & F attorneys will be material witnesses. Because the Court finds that disqualification is required under Rule 1.9 and 1.10, the Court will not address disqualification under Rule 3.7.