Nancy E. WEBB, Plaintiff,

v.

E.I. DU PONT DE NEMOURS & COMPANY, INC., a Delaware corporation; E.I. Du Pont De Nemours & Company, Inc., Plan Administrator; Pension and Retirement Plan, an employee benefit plan, Defendants.

Civ. A. No. 92–580–JLL.

United States District Court, D. Delaware.

Dec. 30, 1992.

John M. Stull, Wilmington, DE, for plaintiff.

Catherine Hagerty Thompson and Richard Allen Paul of E.I. Du Pont de Nemours and Co., Inc., Wilmington, DE, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

Defendants, E.I. Du Pont de Nemours & Company, Inc. a Delaware corporation; E.I. Du Pont de Nemours & Company, Inc., plan administrator; and Pension and Retirement Plan, an employee benefit plan, have brought this motion before the Court seeking to disqualify attorney, John M. Stull, Esq., from serving as counsel for plaintiff, Nancy C. Webb, in this action. (Docket Item ["D.I."] 16.) For the reasons set forth below, this Court will grant defendants' motion.

## II. FACTS

John W. Stull represents plaintiff in an action commenced in this Court on October 6, 1992, in which plaintiff claims *inter alia* that defendants denied certain duties and payments due her under Du Pont's Pension and Retirement Plan (the "Plan") and under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (D.I. 1.) It is not necessary for this Court to detail all the components of the underlying claim at this stage. However, it is important to note, for the purpose of understanding the events that led to this motion, that plaintiff does not claim pension or ERISA benefits directly, but rather through her former spouse, Frank E. Webb. (D.I. 1.) It is therefore the method of distribution of Frank E. Webb's pension benefits which is the main issue in the underlying action.

ERISA provides that a pension plan must prohibit the alienation or assignment of benefits. 29 U.S.C. § 1056(d)(1). ERISA creates a very narrow exception to this prohibition for domestic relation orders ("DRO"s) which meet certain technical requirements as outlined by the statute. 29 U.S.C. § 1056(d)(3)(B)–(E). The domestic relations order meeting these statutory requirements is recognized as a qualified domestic relations order ("QDRO") and as such constitutes an exception to the anti-assignment and anti-alienation provisions of ERISA. The Internal Revenue Code states that the determination of QDROs is to be made by the Plan Administrator. 26 U.S.C. § 414(p)(6)(A).[1]

Mr. Stull was employed as an attorney for the defendants, E.I. Du Pont de Nemours & Company, Inc., ("Du Pont") for twenty-seven years, beginning on March 1, 1963 until his retirement on March 31, 1990. (D.I. 16 at A7.) For at least the last three years of his employment at Du Pont, a part of Mr. Stull's responsibilities consisted of advising Du Pont on ERISA benefit matters[2] and determining whether DROs

---

1. 26 U.S.C. § 414(p)(6)(A) reads in relevant part: the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.

2. Plaintiff admits that Mr. Stull advised defendants on ERISA matters, however, plaintiff objects to the phrasing "advising Du Pont on ERISA matters" since plaintiff maintains that a distinction should be made between Dupont the corporation and Dupont the plan administrator. (D.I. 17 at 3.) For the reasons discussed *infra,* this Court finds that distinction irrelevant for the purposes of this motion.

would be QDROs for purposes of the Pension Plan. (D.I. 16 at A7.)

On October 26, 1992, defendants filed a motion for summary judgment, which alleged, *inter alia*, that under the plan the form of benefit chosen by an employee at retirement cannot be altered after payments have commenced; that the employee in question here—plaintiff's husband—had retired electing a single life annuity; that no DRO had been presented by plaintiff for determination of QDRO status; and that it would therefore be moot to present a DRO for determination of QDRO status since in this case the form of benefit had already been chosen and payment had commenced thus precluding the ability to change the form of benefit. (D.I. 12 at A2.)

In support of its motion for summary judgment, defendants included an affidavit of Kenneth W. Porter, who has been "Chief Actuary"[3] at Du Pont for the last ten years. The affidavit stated in relevant part "to the best of my knowledge, Du Pont has never qualified a domestic relations order received after an individual has elected and begun receiving a single life annuity, which order seeks to have payments made over another individual's lifetime." (D.I. 12 at A2.) In response to Mr. Porter's affidavit, Mr. Stull included, as an appendix to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, a redacted copy of a Du Pont Determination Report,[4] with all relevant names deleted. (D.I. 14 at B-2.) That determination report was offered by plaintiff to demonstrate that Du Pont had previously qualified a DRO in a manner in which it now claimed it was unable to do. Defendants have since provided this Court with a copy of that same determination report with all names visible.

(D.I. 16 Exhibit B.) The complete copy of the report also shows that the Du Pont attorney who prepared the report was John M. Stull. On November 17, 1992, defendants responded to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment by filing both a reply brief in support of their motion for summary judgment (D.I. 15) and the present motion to disqualify plaintiff's counsel (D.I. 16).

## III. DISCUSSION

■ A district court is authorized to supervise the conduct of the members of its bar. *Richardson v. Hamilton International Corporation*, 469 F.2d 1382 (3rd Cir.1972) *cert. denied* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973) "Whenever an allegation is made that an attorney has violated his moral and ethical responsibility ... it is the duty of the district court to examine the charge." *Id.* at 1385. Furthermore, "a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety" because the courts "have a responsibility to maintain confidence in the legal profession." *Id.* at 1385 to 1386.

■ Delaware Lawyers' Rule of Professional Conduct 1.9[5] provides:

**Rule 1.9: CONFLICT OF INTEREST: FORMER CLIENT.**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of

---

**3.** Mr. Porter's complete title is "Chief Actuary and Manager, Financial Analysis—Corporate Actuarial and Human Resources". (D.I. 12 at A1.)

**4.** The determination report states, among other things, the determination of the plan administrator concerning the qualified status of the DRO—in short whether the DRO is a QDRO.

**5.** The Delaware Lawyers' Rules of Professional Conduct have been adopted by the Delaware District Court in the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware. Local Rule 83.6(d)(2) states:

Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct adopted by the Supreme Court of the State of Delaware, as amended from time to time by that Court, shall constitute conduct and grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 [6] or Rule 3.3 [7] would permit with respect to a client or when the information has become generally known.

The parties have argued at length about whether or not plaintiff's counsel has violated Delaware Lawyers' Rule of Professional Conduct 1.9(b) by attaching to his answer to defendant's motion for summary judgment the redacted version of the determination report he prepared while at Du Pont. However, it is clear to this Court, that the applicable rule in this case is Rule 1.9(a), not Rule 1.9(b). This court finds that it is not the use of confidential documents in contravention of Rule 1.9(b) but rather it is the representation of a client whose interests are materially adverse to those of a former client [8] in contravention of Rule 1.9(a) which presents the ethical violation in this case. In short it is not the papers which Mr. Stull attached to plaintiff's answer to defendant's motion for summary judgment which necessitate his being disqualified in this action, it is his representation of a client who is suing his former client on a matter substantially related to one on which he previously worked: it is not the use of any confidential information but rather the representation itself which merits his disqualification.

Quite recently, the United States District Court for the Southern District of New York examined a case with remarkably similar facts to the case at hand. *Ullrich v. Hearst Corp.*, 809 F.Supp. 229 (S.D.N.Y. 1992). In that case, the court, applying New York Code of Professional Responsibility DR 5–108 [9], a rule which is almost identical to Delaware Lawyers' Rule of Professional Conduct 1.9(a) found it necessary to disqualify the attorney despite the fact that the former client could not show that "confidential" information had been used. The *Ullrich* court citing to the decision in *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953), a case whose reasoning the Third Circuit expressly adopted in *Richardson v. Hamilton International Corporation*, 469 F.2d 1382, 1385 (3rd Cir.1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973), stated:

[T]he objecting former client is not required to show that during the earlier representation it disclosed matters to the attorney related to the instant case. Rather, ... the former client need show no more than that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented the former client. Courts may assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation without inquiring into their nature and extent. 809 F.Supp. at 233.

**6.** Rule 1.6 is concerned with the confidentiality of information. It mandates that a lawyer may not reveal information relating to representation without the consent of a client except where the client's consent has been impliedly authorized for purposes of furthering the representation or unless the lawyer believes the revelation is necessary to prevent a criminal act likely to result in death or serious bodily harm or if necessary for the lawyer to defend himself against a criminal or civil charge concerning the conduct in which the client was involved or to respond in any suit where there are allegations concerning the attorney's representation of the client.

**7.** Rule 3.3 is concerned with candor towards the tribunal and states that its rule applies even where it is in conflict with Rule 1.6.

**8.** Plaintiff also argues in its answer to defendant's motion to disqualify plaintiff's counsel that Du Pont was not actually Stull's former client when Stull was working on ERISA and pension plan matters. For the reasons discussed *infra* that argument is rejected by this Court.

**9.** New York Code of Professional Responsibility DR 5–108 provides, in relevant part, that unless he has the consent of a former client "a lawyer who has represented the former client shall not .. [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."

The *Ullrich* court explained the rationale for that rule in a manner applicable to the case at hand. Apparently, the attorney in the *Ullrich* case, like Mr. Stull, spent a considerable amount of time arguing that no confidences had been or would be disclosed. In response the *Ullrich* court stated:

The attorney exhibits an incorrect perception of the legal standard in suggesting that the matter should be resolved based on his assertion that he will not disclose any confidential fact that was communicated to him. The rule is not designed merely to prevent the disclosure of confidences by the lawyer. It concerns itself as much with the lawyer's use of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences. Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses. 809 F.Supp. at 235–236.

One of the major concerns of Rule 1.9 is, as the *Ullrich* court characterized it, the unfair advantage that a lawyer may take of his former client. In the case at hand there is no question that Mr. Stull was involved in a substantially related matter while working for Du Pont, since he drafted the very documents he is now offering in evidence against Du Pont. It is immaterial that those documents would be available to any attorney in discovery. Rule 1.9(a) is not addressed to the documents but to the representation in general. Plaintiff's attorney is not any attorney. He has been employed as an attorney for Du Pont for 27 years, from 1963 to his retirement in 1990. (D.I. 16 at A7 ¶ 4.) As stated earlier, plaintiff's attorney spent the last three years of his employment with Du Pont advising Du Pont on ERISA benefit matters, in particular determining whether DROs would be considered QDROs for purposes of the Pension Plan. (D.I. 16 at A7 ¶ 3.) The case commenced by plaintiff's counsel against Du Pont is based on a determination of a QDRO under Du Pont's pension plan and ERISA benefits. (D.I. 1, 11, 12, 14, 16, and 17.) Those facts alone constitute sufficient grounds to disqualify plaintiff's counsel under Rule 1.9(a).

Plaintiff makes two arguments that Rule 1.9 is not applicable to her counsel. The first appears to be that although Mr. Stull did represent the client previously, and that although he did work on substantially related matters, he was not acting as an attorney when he was working on the substantially related matters and thus he has not represented the client on substantially related matters. Plaintiff bases this theory on a provision in the Internal Revenue Code which states that the determination of QDROs must be made by a Plan Administrator. 26 U.S.C. § 414(p)(6)(A). Plaintiff reasons that since a plan administrator need not be a lawyer and often is a lay person, Mr. Stull, when acting as plan administrator, was not acting as an attorney. This Court finds that argument preposterous. The fact that the Internal Revenue Code permits a non-lawyer to do a portion of the job that Mr. Stull did, does not lead to the conclusion that Mr. Stull was not practicing law when he applied the sections of the statutes in question to the DROs.

That conclusion is confirmed when one considers that the organization which has employed Mr. Stull to deal with its ERISA and pension matters has employed him in his capacity as a lawyer. Du Pont clearly employed Stull as an attorney. The cover letter, to the 1988 Determination Report is signed by Mr. Stull on Dupont Legal Department Stationery. Du Pont made the decision to use its legal staff to do the Plan Administration work. That work involves the application of both the ERISA statute and the Internal Revenue Code. Plaintiff's counsel, who was employed as an attorney in Du Pont's legal department can not now claim that he was not representing Du Pont merely because Du Pont, by giving the QDRO work to its legal department, was seeking a higher level of expertise than that mandated by statute. Merely because a baby can be delivered by a mid-

wife does not mean that when a doctor delivers a baby he is not practicing medicine. Similarly, merely because for the purposes of the Internal Revenue Code, a statute can be applied by a non-lawyer, does not mean that a lawyer applying the statute is not practicing law. Thus this Court finds that Mr. Stull was representing Du Pont when he, as an attorney employed in the legal department, was making QDRO determinations.

Plaintiff's second argument is that it is the Dupont Corporation which is moving to disqualify Stull, but it was not the Dupont Corporation whom Stull was representing when he made QDRO determination reports for Du Pont. Plaintiff argues that at the time Stull was working on QDROs for Du Pont the client was Du Pont as Plan Administrator. Thus, plaintiff's argument concludes that Stull did not formerly represent the client on substantially related matters because it was not this personification of the Du Pont corporate personality who was the client at the time.

This Court sees no reason to create a corporate split personality as plaintiff has suggested, and fortunately, due to the procedural posture of this case, this Court need not do so for the purposes of this motion. It is not Du Pont as a corporation who is moving to disqualify plaintiff's counsel, it is the defendants who are so moving. The defendants, chosen by plaintiff, are E.I. Du Pont de Nemours & Company, Inc. a Delaware Corporation; E.I. Du Pont de Nemours & Company, Inc., plan administrator; and Pension and Retirement Plan, an employee benefit plan. (D.I. 1.) Thus even if this Court were to engage in plaintiff's fiction of the corporate split personality, all three "personalities" are defendants in this action. Even if Mr. Stull did not represent Du Pont, the corporation, but instead represented Du Pont the plan administrator when he prepared QDRO determination reports—a conclusion which this Court would be loathe to draw and fortunately need not reach—Du Pont, the plan administrator, is a named defendant in this action, and as such is moving to disqualify plaintiff's counsel. Plaintiff's answer and brief in opposition to defendant's motion to disqualify plaintiff's counsel actually concedes this point when it states:

> Whatever legal opinions or advice were provided by Plaintiff's counsel in ERISA matters were rendered to the "Plan Administrator" (Du Pont Company), or to the Company as a fiduciary of any such employee benefit plans. Few if any legal opinions were rendered by Plaintiff's counsel to Du Pont Company in its capacity as an employer, such as might occur as to questions of design of an employee benefit plan. (D.I. 17 at 3–4.)

The Plan Administrator whom plaintiff admits was the client of Mr. Stull's and the recipient of the legal opinions proffered by him on ERISA matters is one of the defendants moving for his disqualification here. Thus, plaintiff's distinction concerning client identities is without significance and his argument is moot: the previous client is the present defendant and the matters are substantially related.

■ The requirements for disqualification in accordance with Rule 1.9 have been summarized as follows:

> First, the lawyer must have had an attorney-client relationship with the former client. Second, the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a "substantially related" matter. Third, the interests of the second client must be materially adverse to the interests of the former client. Fourth, the former client must not have consented to the representation after consultation. *Nemours Foundation v. Gilbane, Aetna, Federal Insurance Co.*, 632 F.Supp. 418, 422 (D.Del.1986).

It is clear that all four elements have been met in this case. As discussed above this Court does find that an attorney-client relationship existed between Mr. Stull and defendants. There appears to be no dispute that the matters worked on previously are substantially related to the matter at hand since the determination report prepared by Mr. Stull for defendants is now being offered as a main piece of evidence in the present case. It is apparently also uncontested that the interests of the former

client are adverse to the interests of the present client, since the former client is the defendant, and it is clear that the former client does not consent to the representation since that client has brought this motion to disqualify.

The other arguments advanced by both plaintiff and defendant are primarily addressed to the issues of attorney-client privilege as it relates to the use of confidential documents, and thus need not be addressed at this time.[10] As this Court noted earlier, plaintiff's disqualification is not based on the use of confidential documents as outlined in Rule 1.9(b) but rather on the representation of a party with interests adverse to those of a former client. Disqualifying plaintiff's counsel in this case is in keeping with a long-standing tradition that an attorney owes a certain duty to ex-clients as well as to present clients. As a leading treatise on professional ethics has stated:

> The idea that lawyers owe duties to ex-clients is neither controversial nor novel. It is an outgrowth of the agency law principle that an agent's duties to his principal continue, albeit in reduced scope, after the agency relationship has been terminated. A lawyer has no duty to accept a particular client or matter, but once having accepted, she loses a certain amount of freedom to take on new matters, even when the first representation is over. The conflict of interest rules thus give both present and former clients a limited form of veto over their lawyer's choice of work. Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering*, § 1.9.103 (2nd ed. Supp.1991).

**10.** Plaintiff has cited a number of cases which stand for the proposition that in ERISA and certain other trust contexts, the true client is not the trustee who consults with the attorney, but the beneficiaries on whose behalf the attorney is actually engaged and who, in many instances, are actually paying for the attorney. *Washington–Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982); *Riggs National Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 712–14 (Del.Ch.1976); *Donovan v.*

## IV. CONCLUSION

For the reasons stated above, this Court will grant defendant's motion to disqualify plaintiff's counsel. An order will be entered forthwith in accordance with this opinion.

*Fitzsimmons,* 90 F.R.D. 583, 586, 587 (N.D.Ill. 1981). These cases, however, are all addressed to the very limited situation of attorney-client privilege and the use of confidences. They are thus applicable to a discussion of Rule 1.9(b) but not Rule 1.9(a). Furthermore, as this Court noted earlier, no matter how plaintiff has chosen to define the client of Mr. Stull's first representation, plaintiff has also managed to name that original client as a defendant in this action.