# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GARY M. HARPER and SAMANTHA )
HARPER, husband and wife, )
                               )
                Plaintiffs, )
                               )  C.A. No. 16C-05-140 RRC
      v. )
                               )
BEACON AIR, INC., HARVEY, )
HANNA & ASSOCIATES, INC., )
JOHN HARVEY, AND SUNDEW )
PAINTING, INC. )
                               )
                Defendants, )
                               )

Submitted: January 17, 2017
Decided: March 2, 2017

On Defendant John Harvey's Motion to Disqualify Plaintiffs' Counsel. **DENIED.**

# <u>MEMORANDUM OPINION</u>

Gary S. Nitsche, Esquire and Joel H. Fredericks, Esquire, Weik, Nitsche & Dougherty, Wilmington, Delaware, Attorneys for Plaintiffs.

Benjamin C. Wetzel, III, Esquire and Natalie M. Ippolito, Esquire, Wetzel & Associates, P.A., Wilmington, Delaware, Attorneys for Defendant John Harvey

Colin M. Shalk, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, Attorney for Defendant Beacon Air, Inc.

1

Eric S. Thompson, Esquire and William A. Crawford, Esquire, Franklin & Prokopik, Wilmington, Delaware, Attorneys for Defendant Harvey, Hanna & Associates, Inc.

Susan L. Hauske, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware, Attorney for Defendant Sundew Painting, Inc.

COOCH, R.J.

## I. INTRODUCTION

Before the Court is Defendant John Harvey's Motion to Disqualify Plaintiffs' Counsel. This motion arises from Plaintiff Gary Harper's alleged slip and fall on Defendant John Harvey's property. Mr. Harvey has moved to disqualify Plaintiffs' counsel on grounds that a conflict of interest exists, since Plaintiffs' counsel previously had represented Mr. Harvey as a plaintiff in a separate unrelated automobile accident case. Mr. Harvey contends that during his previous automobile accident lawsuit, he "likely" revealed information to Plaintiffs' counsel that now gives Plaintiffs' counsel an advantage in this case, creating a conflict of interest that warrants Plaintiffs' counsel's disqualification.

Comment [3] to Delaware Lawyers' Rule of Professional Conduct 1.9 guides this Court's analysis of whether two matters are "substantially related." Under that Rule, two matters are "substantially related" "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."[1]

Whether there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation [that] would materially advance the client's position in [this] subsequent matter" is the only factor of Rule 1.9 at issue in this case. The parties agree that the two legal matters are not "substantially related" in the sense that they do not involve the same transaction or legal dispute.

---

[1] Del. Lawyers' R. Prof'l Conduct 1.9 cmt. 3.

This Court concludes that Mr. Harvey, bearing the burden of proof, has not set forth sufficient evidence to demonstrate a "substantial risk" that he disclosed information to Plaintiffs' counsel that now "materially advance[s]" his clients' position in this case, thus requiring disqualification. Rather, Mr. Harvey has simply proffered that it is "likely" that he revealed information to Plaintiffs' counsel that would give Plaintiffs' counsel an "indirect advantage" in this case.[2] The Court understands that Mr. Harvey is quite upset that his former counsel in the automobile accident case have now brought a slip and fall case against him. However, disqualification of prior counsel has been held by this Court to be an "extreme remedy" which the Court finds is not warranted by the facts of this particular case. The Court thus **DENIES** the motion.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiffs, represented by present counsel Gary S. Nitsche and Joel H. Fredericks, filed the instant slip and fall action on May 16, 2016. Plaintiffs allege that on October 15, 2014, while performing plumbing work on a residential property owned by Mr. Harvey, Plaintiff Gary Harper "fell through a hole cut for an HVAC vent that was hidden by a tarp."[3] On the date of the accident, Mr. Harvey had insurance for the property though The Travelers insurance company ("Travelers"). Plaintiffs filed suit against Harvey, Hanna & Associates, Inc. as the general contractor, Beacon Air, Inc. as the HVAC subcontractor, and Mr. Harvey as the property owner and the person who hired the contractor.[4]

Plaintiffs' counsel, Gary S. Nitsche, had previously represented Mr. Harvey as a plaintiff against an unrelated defendant in the earlier automobile accident action.[5] In that action, Mr. Nitsche had the assistance of his associate, Samuel D. Pratcher, III, who was the primary attorney handling that matter. That action was instituted in this Court on June 5, 2013, and involved a motor vehicle accident in which an unrelated party had struck Mr. Harvey's vehicle with her vehicle on Limestone Road in New Castle County. That action was dismissed on January 12, 2015 after the parties agreed to submit the case to binding arbitration.

---

[2] Def.'s Supp. Resp. in Support of his Motion to Disqualify.
[3] Substituted Pl.'s Resp. at 1.
[4] On January 3, 2017, the parties filed a stipulation to amend the complaint that would add Sundew Painting, Inc. as a defendant. The Court ordered the complaint so amended on January 6. Plaintiffs' Amended Complaint was subsequently filed on January 10.
[5] *Harvey v. Wilson*, N13C-06-032 JRJ (June 5, 2013).

# III. PARTIES' CONTENTIONS[6]

Mr. Harvey opposes Mr. Nitsche and his law firm's representation of Plaintiffs against him on grounds that a conflict of interest exists. Although Mr. Harvey's counsel had originally alleged in the Motion to Disqualify that the two matters were "substantially related," Mr. Harvey's counsel now acknowledges that the two matters are not "substantially related" as set forth in Delaware Lawyers' Rule of Professional Conduct 1.9, in that this action does not arise from the same transaction or legal dispute as the previous action. Mr. Harvey had also originally contended "that a conflict of interest exists based on the fact that the incident giving rise to this action occurred at [Mr.] Harvey's residence at the same time he was represented by Mr. Nitsche and his firm," and that there is a "*great likelihood* that [Mr.] Harvey mentioned or discussed this incident with [Mr.] Nitsche or another member of his firm" during the prior representation.[7] Mr. Harvey also argues that Mr. Nitsche "would have the advantage of knowing [Mr.] Harvey's settlement philosophy," and that "Harper's position in this action could be materially advanced based on any information provided to Nitsche during the Harper incident at [Mr. Harvey's] residence."[8]

However, in a later affidavit submitted to the Court, Mr. Harvey stated *in toto*:

> 1. I am a defendant in the above-captioned action.
>
> 2. On October 15, 2013, when the plaintiff was allegedly injured while working on my residence, I was represented by Gary Nitsche, Esquire and his law firm as a plaintiff in a personal injury action.
>
> 3. It is *likely* that I would have mentioned or discussed this incident to Mr. Nitsche or someone from his law firm around the time the incident occurred, because they were my attorneys at the time.
>
> 4. In conclusion, Mr. Harvey asserts that "[w]alling off Mr. Nitsche and Mr. Pratcher from this action allowing plaintiff to continue to be

---

[6] Beacon Air, Inc., and Harvey, Hanna & Associates, Inc. affirmatively take no position on Mr. Harvey's Motion to Disqualify Plaintiffs' Counsel. Sundew Painting has not expressed any position on Mr. Harvey's motion.
[7] Def.'s Mot. to Disqualify Pl.'s Counsel, at 4 (emphasis added).
[8] *Id.*

represented by Mr. Fredericks would satisfy Harvey's conflict of interest concerns."[9]

In response, Plaintiffs' counsel, Mr. Nitsche, contends that no conflict of interest exists and that he should not be disqualified from representing Plaintiffs. Mr. Nitsche argues that this case and his previous case with Mr. Harvey "involve separate and distinct incidents and claims."[10] Mr. Nitsche "certified" in his Response that "he has spoken with all persons from his office who would have communicated with [Mr.] Harvey during the previous representation and that they have no recollection of [Mr.] Harvey disclosing, or even mentioning, any information regarding the incident involving [Mr.] Harper."[11] Mr. Nitsche also "certif[ies] that Mr. Harvey never discussed the incident involving Mr. Harper with [him]."[12] Lastly, Plaintiffs contend that as Mr. Harvey is insured by Travelers, Travelers will assume the defense in its entirety, and that "[Mr.] Harvey does not participate in or have a right to dictate any settlement negotiations. The negotiations, to the extent there are any, are through Travelers pursuant to the policy of insurance."[13] Mr. Harvey's counsel does not dispute this contention.[14]

---

[9] Def.'s Supp. Resp. in Support of his Motion to Disqualify, Affidavit of John Harvey (emphasis added).

[10] Substituted Pl.'s Resp. at 4.

[11] *Id.* at 5.

[12] Pl.'s Supp. Opposition to Defendant's Mot. to Disqualify Counsel, at 2.

[13] *Id.*

[14] During oral argument on this motion, the Court asked Mr. Harvey's counsel about this contention:

> THE COURT: What about Mr. Nitsche's point that Travelers is going to be governing the settlement—
>
> MR. WETZEL: That's fair.
>
> THE COURT: —approach in this, as opposed to it's not like a medical negligence case, where a doctor has a consent to settle policy?
>
> MR. WETZEL: Correct.
>
> THE COURT: The settlement's going to be out of Mr. Harvey's hands, ultimately.
>
> MR. WETZEL: I grant you that, Your Honor, . . . .

*Harper v. Beacon Air, Inc.*, C.A. No. N16C-05-14 RRC, 8:20–9:7 (Del. Super. Dec. 19, 2016) (TRANSCRIPT).

5

Mr. Nitsche has advised the Court, however, that "as Mr. Pratcher was the primary attorney handling the [previous] matter and in an effort to compromise with Mr. Harvey, [Mr. Nitsche] will agree to 'wall off' Mr. Pratcher from Mr. Harper's case."[15]

## IV. DISCUSSION

### A. *A Test of Whether There Is a "Substantial Risk" that Plaintiffs' Counsel's PriorRepresentation of Mr. Harvey "Material Advances" Plaintiffs' Position Governs a Motion for Disqualification*

Even though the parties agree that Mr. Harvey's previous case with Plaintiffs' counsel is not factually or legally "substantially related" to the case at bar, a statement of the test regarding disclosure of confidential information that would "materially advance" the lawyer's new client's position, thus requiring lawyer disqualification pursuant to Delaware Lawyers' Rule of Professional Conduct 1.9, is warranted.

"Generally, disqualification motions are disfavored because they are often filed for tactical reasons rather than bona fide concerns about client loyalty."[16] "The party moving for disqualification bears the burden of proof. A movant for disqualification must have evidence to buttress his claim of conflict because a litigant should, as much as possible, be able to use the counsel of his choice."[17] "To ensure that disqualification motions are not granted liberally, the Court reviewing the motion must weigh the effect of any alleged conflict on the fairness and integrity of the proceedings before disqualifying the challenged counsel."[18] Notably, this Court has cautioned that "disqualification of counsel is an extreme remedy that should be employed only when necessary to ensure the fairness of the litigation process."[19]

---

[15] Pl.'s Supp. Opposition to Def.'s Mot. to Disqualify Counsel, at 2. *See also* Del. Lawyers' R. Prof'l Conduct 1.0(k) (providing that "'[s]creened' denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law.").

[16] *Sanchez-Caza v. Estate of Whetstone*, 2004 WL 2087922, at *4 (Del. Super. Sept. 16, 2004).

[17] *Hendry v. Hendry*, 2005 WL 3359078, at *2 (Del. Ch. Dec. 1, 2005).

[18] *Sanchez-Caza*, 2004 WL 2087922, at *4.

[19] *Fernandez v. St. Francis Hosp., Inc.*, 2009 WL 2393713, at *5 (Del. Super. Aug. 3, 2009). *See also, e.g.*, *Jackson v. Rohm & Haas Co.*, 366 Fed. Appx. 342, 347 (3d Cir. 2010) (describing disqualification as an "extreme remedy").

6

Whether a conflict of interest exists in a given case is governed by the Delaware Lawyers' Rules of Professional Conduct. Rule 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.[20]

Comment [3] to Rule 1.9 states:

> [m]atters are 'substantially related' for purposes of this Rule [1] if they involve the same transaction or legal dispute or [2] if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.[21]

Delaware courts have previously analyzed the "substantially related" requirement of Rule 1.9. Prior to the adoption of Comment [3] in 2003, this Court held in *Kanaga v. Gannett Co., Inc* that three factors existed as to whether two actions were "substantially related."[22] First, the Court would inquire into the nature and scope of the prior representation. Second, the Court would determine the nature and scope of the present litigation. Third, the Court would analyze "whether the client *might* have disclosed confidences to counsel in the course of the prior representation that were relevant to the action, and if so, could those confidences be detrimental to the former client in the current litigation."[23]

However, since this Court's decision in *Kanaga*, Comment [3] was adopted which establishes a stricter standard for whether two matters are "substantially related" before a lawyer will be disqualified. The third factor in *Kanaga* had directed the Court to determine "whether the client *might* have disclosed confidences to counsel in the course of the prior representation."[24] By contrast, Comment [3] now provides that the inquiry is whether there is a "*substantial risk*

---

[20] Del. Lawyers' R. Prof'l Conduct 1.9(a).

[21] Del. Lawyers' R. Prof'l Conduct 1.9 cmt. 3. This Rule and its Comments are virtually identical to Model Rule of Professional Conduct 1.9 and its Comments.

[22] 1993 WL 485926, at *1 (Del. Super. July 1, 1999) (adopting a test set forth by the Eastern District of Pennsylvania in *INA Underwriters Insur. V. Nalibotsky*, 594 F.Supp. 1199 (E.D. Pa. 1984)).

[23] *Id.* (emphasis added).

[24] *Kanaga*, 1993 WL 485926, at *1 (emphasis added).

that confidential factual information" was disclosed during the prior representation that would be detrimental to the former client in the present litigation.[25]

The "substantial risk" language of Comment [3] is found in the Restatement (Third) of the Law Governing Lawyers § 132(2). There, the Restatement provides that two matters are substantially related if "there is a *substantial risk* that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known."[26]

Analyzing its own Rule 1.9 and relevant comments (which are essentially identical to Delaware's Rule 1.9(a) and its relevant comments), the United States District Court for the District of Columbia has addressed the appropriate analysis to determine whether such a "substantial risk" exists. In *Headfirst Baseball LLC v. Elwood*, that court's approach to whether such a "substantial risk" exists, which this Court finds instructive, was set forth as follows:

> The relevance to the new representation of the information obtained in the prior representation is alone insufficient to warrant disqualification where the matters are not actually the same transaction or legal dispute. Rather, there must be a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. Although the D.C. Rules of Professional Conduct do not define "confidential information," that term is defined in the Restatement as "information relating to representation of a client, other than information that is generally known." . . . As to the "substantial risk" requirement, while neither the Rules nor the Restatement specifically define that term, the Restatement indicates that such risk "exists where it is reasonable to conclude that it would materially advance the client's position in the subsequent matter to use confidential information obtained in the prior representation."
>
> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer

---

[25] Del. Lawyers' R. Prof'l Conduct 1.9 cmt. 3 (emphasis added). The preamble to the Rules provides "[t]he Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. . . . The comments are intended as guides to interpretation, but the text of each rule is authoritative." Del. Lawyers' R. Prof'l Conduct Preamble at [21]. Accordingly, as Rule 1.9 and its respective Comments contemplate a different standard than that set forth in *Kanaga*, this Court concludes that the three-part test of *Kanaga* was superseded by the 2003 adoption of the Rules and their comments.

[26] Restatement (Third) of the Law Governing Lawyers § 132(2) (2000) (emphasis added).

8

has confidential information to use in the subsequent matter, nor should a court require proof that an attorney actually had access to or received privileged information while representing a client in a prior case. Rather, a court may draw conclusions about the possession of such information based on the nature of the services the lawyer provided the former client and the information that would in ordinary practice be learned by a lawyer providing such services. However, the [movant] still must plead facts showing that information from the first matter might be useful in the second.[27]

In addition to confidential information that may have been disclosed to the lawyer in the prior representation, a leading treatise on legal ethics, *The Law of Lawyering*, states also that "the lawyer and the new client would have an improper advantage if the lawyer was permitted to make use of general tactical information and psychological insights. . . ."[28] Information that may give a party's prior attorney an "indirect advantage"[29] in the second litigation, referred to as "playbook" information by the treatise,[30] has also been so termed by at least one Delaware court, and was described as a "limited but not deciding factor pointing towards disqualification."[31] "Playbook" information commonly includes

[claims] that the lawyer learned the former client's settlement philosophy, or what sequence of demands or other tactics the former client uses in negotiating business deals, how the former client generally conducts its business, how the client deals with the stresses of litigation, what quirks of personality the client possesses or suffers from, or, in general, what "hot buttons" can be pushed to cause panic or confusion to the former client.[32]

However, as *The Law of Lawyering* suggests, "Pressed too far, the playbook rationale can give a former client an unjustifiably broad right to bar former counsel

---

[27] *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 210–11 (D.D.C. 2013) (internal quotations and citations omitted). Like the D.C. Rules of Professional Conduct, the Delaware Lawyers' Rules of Professional Conduct do not define "confidential information" either.

[28] Geoffrey S. Hazard, Jr., W. William Hodes, & Peter R. Jarvis, *The Law of Lawyering*, § 14.07, 14-26 (4th ed. 2016).

[29] *Bowden v. Kmart Corp.*, 1999 WL 74330, at *2 (Del. Super. July 1, 1999).

[30] Hazard et al., *supra* note 28, at 14-26.

[31] *Fernandez v. St. Francis Hosp., Inc.*, 2009 WL 2393713, at *4 n.33 (Del. Super. Aug. 3, 2009) (noting that "[c]ourts [waver] on the extent to which "playbook" information plays a role in disqualification. This Court considers it as a limited but not deciding factor pointing towards disqualification.").

[32] Charles W. Wolfram, *Former-Client Conflicts*, 10 GEO. J. LEGAL ETHICS 677, 723 (1997).

from representing a later opponent; if 'insight' into intangibles is sufficient, it would be a rare case indeed that would not qualify."[33]

That treatise also observes that "[when] matters are factually distinct, disqualification is sometimes ordered where a lawyer has represented a client in a series of matters that involve the same modus operandi and underlying factual base as the new matter."[34] Delaware courts have considered the "indirect advantages which might flow from the prior representation" in determining whether disqualification is appropriate. With respect to "indirect advantages," this Court has previously stated that "an attorney who subsequently opposes a former client is often in a better position to know: 'what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack . . . to pursue, what settlements to accept and what offers to reject."[35]

Delaware courts have found a conflict of interest to exist when the lawyer has gained such an indirect advantage from the prior representation only when the attorney had gained knowledge that would substantially assist that attorney in prosecuting a case against the former client.[36] In *Fernandez v. St. Francis Hosp., Inc.*, a medical negligence action, this Court ordered disqualification based on its finding that the former client—the defendant doctor—and lawyer would have likely discussed the doctor's practices with respect to the standard of care, office protocols, and patient interactions.[37] This is the kind of "modus operandi" referred to by *The Law of Lawyering*. Additionally, the *Fernandez* Court found that, since the prior representation was ongoing while the doctor was treating the patient in the *Fernandez* case, the lawyer was given information regarding the doctor's "practice, professional ability, and standards of medical care" that would be directly relevant to the *Fernandez* litigation. The *Fernandez* Court also noted that the plaintiff's counsel would have unfairly benefited from the prior representation of the defendant doctor because he had knowledge of the doctor's litigation tendencies and settlement philosophy. The Court ultimately held that the

---

[33] Hazard et al., *supra* note 28, at 14-27.

[34] Hazard et al., *supra* note 28, at 14-28.

[35] *Bowden v. Kmart Corp.*, 1999 WL 743308, at *2 (Del. Super. July 1, 1999) (quoting *Webb v. E.I. Du Pont de Nemours & Co., Inc.*, 811 F. Supp. 158 (D. Del. 1992)).

[36] The Court notes that in both *Bowden* and *Fernandez*, the Court applied the test set forth in *Kanaga*. Although this Court now holds that a stricter test should be applied pursuant to the 2003 amendment to the Rules, the Court still finds the analysis in those cases helpful in reaching its conclusion. The Court declines to speculate on whether the same holdings would have been reached under the "substantial risk" standard.

[37] *Fernandez*, 2009 WL 2393713, at *3.

combination of these factors required disqualification of the plaintiff's counsel who had previously represented the defendant doctor in that case.

Additionally, in *Bowden v. Kmart Corporation* (a pre-Comment [3] case), this Court found that disqualification was appropriate when the plaintiff's counsel had previously represented the defendant corporation in a separate personal injury incident. Finding that the attorney had worked extensively with the corporation in defending against that lawsuit, the Court held that the attorney had substantial knowledge about the internal workings of the company, and was in an unfair position of knowing what discovery materials to ask for, who to depose, what "lines of attack to pursue," and what settlement offers to accept or reject.[38] The Court held that these indirect advantages gained from previously defending the defendant corporation justified disqualifying the attorney in *Bowden*.

This Court has ordered disqualification based on "playbook" information in two contexts. First, under *Fernandez*, the Court ordered disqualification when the moving party could show that its former lawyer gained knowledge of the moving party's pattern of conduct that would be advantageous to the lawyer in the subsequent litigation. Second, under *Bowden*, the Court ordered disqualification (although without using the term "playbook") where the moving party could articulate specific knowledge gained by the lawyer in the prior litigation that could be detrimental to the moving party in the subsequent litigation. Accordingly, this Court only ordered disqualification based on "playbook" in a "limited context" even under the more lenient *Kanaga* standard.[39]

B. *Movant, Bearing the Burden of Proof, Has Not Shown That the Information Gained by Plaintiffs' Counsel in the Prior Representation Will "Materially Advance" Plaintiffs' Counsel's Position*

The Court must consider whether there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance [Mr. Nitsches'] clients' position in the subsequent matter."[40] Mr. Nitsche has represented that neither he, any lawyer in his firm nor any other employee recalls Mr. Harvey discussing Mr. Harper's incident with prior counsel "or someone from [Mr. Nitsche's] law firm." Additionally, Mr. Harvey has not definitively advised the Court that he in fact

---

[38] *Bowden*, 1999 WL 743308, at *2.
[39] *Fernandez*, 2009 WL 2393713, at *2 n.33.
[40] Del. Lawyers' R. Prof'l Conduct 1.9 cmt. 3.

11

discussed this matter with Plaintiffs' counsel; rather, Mr. Harvey now asserts that it is "likely" (after originally asserting that there was a "great likelihood") that he discussed the new slip and fall matter with them. Accordingly, the only issues in this case are whether Mr. Harvey's "playbook" information, such as his supposed "settlement philosophy," gained by Plaintiffs' counsel, or whether Mr. Harvey's "likely" discussion of this case with Plaintiffs' counsel during their previous representation of him, materially advance the Plaintiffs' position in this action.

However, as defined by the Restatement of the Law Governing Lawyers, "confidential information" is "information relating to representation of a client, other than information that is generally known."[41] As previously stated, this can include "playbook" information. Accordingly, this Court must determine whether there is a "substantial risk" that the movant's "playbook" information, or any non-playbook information, possibly learned by Plaintiffs' counsel would "materially advance" his new clients' position in this litigation. This Court finds that Mr. Harvey has not set forth sufficient facts in support of his assertion that the potential "playbook" information or other information learned by Plaintiffs' counsel during their prior representation of Mr. Harvey does not "materially advance" the plaintiffs' position in this case.[42]

Although this Court has previously ordered disqualification based in part on "playbook" information, this case is distinguishable from those cases in which this Court previously found the "extreme" remedy of disqualification was appropriate. In *Fernandez*, the plaintiff's lawyer in that action had learned personal information about the defendant that was helpful in prosecuting that case through his prior representation of the defendant doctor. In *Bowden*, the plaintiff's lawyer had previously represented a corporation in a separate personal injury action and gained information about the corporation's employees, who would be important to depose in the subsequent representation, and information about the corporation's settlement philosophy. The facts supporting the Court's order of disqualification in those cases are not present in this case.

The Court finds that Mr. Harvey, bearing the burden of proof, has not shown that there is a "substantial risk" that he disclosed information to Plaintiffs' counsel during Mr. Harvey's personal injury case with Plaintiffs' counsel, and not of the

---

[41] Restatement (Third) of the Law Governing Lawyers § 59 (2000).

[42] *See* Oral Argument Transcript, *supra* note 14 (movant's counsel conceding that "[t]he settlement [of the present slip and fall case is] going to be out of Mr. Harvey's hands, ultimately.").

type that would give Plaintiffs' counsel a "material advantage" in prosecuting this premises liability case against Mr. Harvey. Mr. Harvey has not averred that he disclosed any information to Plaintiffs' counsel that would assist him in knowing who to depose or what documents to request, as was the case in *Bowden*. Given Plaintiffs' counsel's certification that no one from his office discussed this matter with Mr. Harvey, Mr. Harvey has not presented sufficient evidence showing that there is a "substantial risk" that Plaintiffs' counsel gained specific knowledge from his prior representation of Mr. Harvey that would "materially advance" Plaintiffs' counsel's position in this litigation.

Rather, Mr. Harvey only generally suggests that Plaintiffs' counsel has an indirect advantage. Mr. Harvey argues that Plaintiffs' counsel is aware of his "settlement philosophy," [43] and that it is "likely" that he mentioned the underlying incident in this case to Mr. Nitsche or someone at his law firm during their prior representation of Mr. Harvey. However, Plaintiffs' counsel has represented, and Mr. Harvey has not contested, the Travelers insurance policy provides that Travelers will assume the defense of this action. Any alleged indirect benefit that Plaintiffs' counsel gained from his prior representation of Mr. Harvey is mitigated by Travelers' assumption of the defense. [44]

This is not a case requiring the "extreme remedy" of disqualification. The Court observes that this motion was not likely filed for tactical reasons, but rather because Mr. Harvey appears to have a bona fide concern about Mr. Nitsche's client loyalty. The Court recognizes that Mr. Harvey is unhappy with Mr. Nitsche's present representation of Plaintiffs in this case against him. However, the degree of a former client's displeasure with his former attorney's present representation of a plaintiff against him is not a determinative factor contemplated by the Lawyers' Rules of Professional Conduct or by the case law. The Delaware Lawyers' Rules of Professional Conduct govern only whether a lawyer can accept a new case, not whether the lawyer should have, in the exercise of that lawyer's discretion, taken that new case.

As one authority has observed:

> when courts observe the pragmatic concern of the [substantial relationship] standard and its test with open-eyed vigilance to protect against subsequent misuse of confidential information of former clients, . .

---

[43] Def.'s Mot. to Disqualify Pl.'s Counsel, at 4 (emphasis added).
[44] The Court need not reach the issue of whether it should order that Mr. Pratcher must be "screened" in this litigation, as Mr. Nitsche has agreed to do so.

13

. the standard achieves a fit and nice balance between the need to protect legitimate client expectations about a lawyer's loyalty and undertaking to keep matters confidential and, at the same time, the need to make legal services as widely available as possible.[45]

## V. CONCLUSION

Defendant John Harvey's Motion to Disqualify Plaintiffs' Counsel for Conflict of Interest is **DENIED.**

/s/ *Richard R. Cooch*

Richard R. Cooch, R.J.

oc: Prothonotary

---

[45] Wolfram, *supra* note 32, at 738.

14